1
2
3
4                       UNITED STATES DISTRICT COURT
5                      NORTHERN DISTRICT OF CALIFORNIA
6

7  PRECIOUS CHATMAN,                    Case No.  3:22-cv-04849-WHO;
                                        3:22-cv-04850-WHO
8              Plaintiff,

9        v.                             **GRANTING MOTION FOR PARTIAL
                                        JUDGMENT ON THE PLEADINGS
10  WEDRIVEU, INC,                      AND GRANTING IN PART MOTION
                                        TO REMAND**
              Defendant.
11                                      Re: Dkt. No. 18 (case no. 22-cv-04849)
12                                      Dkt. Nos. 16, 22 (case no. 22-cv-04859)
13

14       Plaintiff Precious Chatman works for defendant company WeDriveU, a shuttle

15  transportation service based in the Bay Area.  She brought a putative class action and a claim

16  arising under California's Private Attorney General Act ("PAGA") in state court, alleging

17  WeDriveU violated various California state workplace laws.  As relevant here, Chatman asserts

18  that WeDriveU failed to pay proper overtime, meal period, and sick leave.  She also argues

19  WeDriveU engaged in unfair business practices and failed to pay minimum wage, provide

20  required rest periods, provide accurate itemized wage statements, and reimburse employees for

21  business expenses.  These violations, she says, also give rise to her PAGA cause of action.

22       Currently pending are Chatman's Motion to Remand case No. 3:22-CV-04850 ("the

23  PAGA case") to state court ("Rem. Mot."), [Dkt. No. 22]; WeDriveU's Motion for Judgment on

24  the Pleadings in the PAGA case ("PAGA Mot."), [Dkt. 16]; and WeDriveU's Motion for

25  Judgment on the Pleadings in case no. 3:22-CV-04849 ("the class action" or "the purported class

26  action") ("Class Mot."), [Dkt. 18].  WeDriveU's motion  for judgment on the pleadings[1] in both

27
28  _____
    [1] Although WeDriveU does not label them as such, both motions are for *partial* judgment on the

cases rests on the theory that § 301 of the Labor and Management Relations Act ("LMRA") preempts Chatman's claims pursuant to a collective bargaining agreement ("CBA"). That is correct, as far as it goes, since Chatman also brings claims not encompassed by the CBA that are not preempted. Chatman opposes judgment on the pleadings and moves to remand the PAGA suit to state court. For the reasons that follow, I will GRANT the Motions for Judgment on the Pleadings in each case and GRANT in part the Motion to Remand the PAGA case. I decline to exercise supplemental jurisdiction over the remaining state law claims in either case and so sua sponte remand to state court all remaining state law claims in both cases.

## BACKGROUND

Chatman brings her putative class action claims on behalf of herself and all those similarly situated. Class Action Complaint ("Class Compl.") [Class Dkt. No. 1, Ex. A ¶ 27, 37]. She also brings a claim under PAGA based on the same underlying allegedly unlawful conduct. PAGA Complaint ("PAGA Compl.") [PAGA Dkt. No. 1, Ex. A ¶¶ 1, 4-6, 11, 13-17, 19-20, 22-26]. While the class complaint seeks remedies for conduct going back to April 2018, the PAGA case seeks remedies only since February 11, 2021. *Id.* ¶ 7. Because both complaints assert the same underlying facts, I cite only the class complaint in this factual recitation.

Chatman alleges that defendant WeDriveU provides shuttle transportation services for various third-party companies, and that she began working for WeDriveU in April 2018. Class Compl. ¶¶ 2, 3. She asserts that she was not paid for time spent undergoing mandatory drug tests, COVID questionnaires and screenings, and other required examinations; that WeDriveU routinely rounded down actual time worked when recording hours and pay; and that working without time properly recorded forced her to forfeit her statutory rights to minimum wage, overtime compensation, off-duty meal periods, and proper sick leave compensation. *Id.* ¶ 8. She alleges that WeDriveU incorrectly calculated her overtime, meal, and rest period pay by failing to account for her "incentive compensation." *Id.* ¶ 10. The complaint also states that WeDriveU failed to provide the required 30 minute off-duty meal periods or rest periods and rounded down the

---

pleadings.

United States District Court
Northern District of California

counted time, *id.* ¶ 11, 12, 24; failed to pay minimum wage or overtime for all hours worked, *id.* ¶ 13, 24; failed to provide itemized and accurate wage statements, *id.* ¶ 14; did not furnish wages within seven calendar days of the close of payroll, *id.* ¶ 16; miscalculated her sick leave pay, *id.* ¶ 17-19; failed to reimburse her for required business expenses, including use of cell phones, *id.* ¶ 22-23; and has not paid required waiting time penalties, *id.* ¶ 20.  She also says that WeDriveU's various alleged violations of state law were unfair business practices, in violation of California Business and Professions Code sections 17200, et. seq (the Unfair Competition Law, or "UCL"), including WeDriveU's failure to properly record hours worked, pay workers minimum wage and overtime wages, and provide workers meal and rest periods.  *Id.* ¶ 32.

Chatman's PAGA claim alleges that this same conduct violated various state laws, which together form the basis for a PAGA action.  PAGA Compl. ¶ 8.

WeDriveU removed both cases to federal court, asserting as the basis for jurisdiction preemption under § 301 of the LMRA.  [Class Dkt. No. 1; PAGA Dkt. No. 1].  The removal notices explained that Chatman is subject to the CBA, the terms of which preempt many of her claims.  Alongside its motions, WeDriveU filed Requests for Judicial Notice with a copy of the CBA.  [Class Dkt. No. 19; PAGA Dkt. No. 17].  Chatman does not mention the CBA in her complaints.

As discussed further below, *infra* Discussion.II, I grant the Requests for Judicial Notice and so I review the relevant contents of the CBA here.  *See* Class Dkt. No. 19, Ex A.  The CBA provides for wages that are not less than 30 percent more than state minimum wage, *id.* at 27-28; hours of work, *id.* at 6; working conditions, *id.* at 6-7, 9, 17-18, 28; premium overtime, *id.* at 6-7; final and binding arbitration, *id.* at 22-24; and paid sick days, *id.* at 16.

Additionally, and as relevant to these suits, WeDriveU previously settled class claims for alleged violations of worker protection laws ("the Davis Settlement").  *See* Reply in Support of Motion for Judgment on the Pleadings ("Class Repl.") [Class Dkt. No. 23] Ex. A, B.  As discussed below, *infra* Discussion.II, I take judicial notice of these settlement documents.  Unless a class member opted out, the Davis Settlement waived the rights of all WeDriveU employees to bring any claim arising before December 22, 2018, related to meal periods, rest periods, minimum wage,

United States District Court
Northern District of California

1 overtime, unreimbursed business expenses, waiting time penalties, vacation and sick leave pay,

2 maintenance of employee records, adequacy of wage statements, PAGA penalties, unfair business

3 practices, and "[a]ny other claims alleged . . . or which could have been alleged based on the facts

4 alleged." *Id.* Ex. A at pdf 11-12. The judicially approved settlement includes the names of parties

5 that opted out and Chatman is not listed. *Id.* at Ex. B pdf 7.

6                                            **LEGAL STANDARD**

7       **I.      Judgment on the Pleadings**

8            "Judgment on the pleadings is properly granted when [, accepting all factual allegations in

9 the complaint as true,] there is no issue of material fact in dispute, and the moving party is entitled

10 to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)

11 (quoting *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009)). "Analysis under Rule 12(c) is

12 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must

13 determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal

14 remedy.'" *Id.* (quoting *Brooks v. Dunlop Mfg. Inc.,* No. C 10–04341 CRB, 2011 WL 6140912, at

15 *3 (N.D. Cal. Dec. 9, 2011)). Either motion may be granted only when it is clear that "no relief

16 could be granted under any set of facts that could be proven consistent with the allegations."

17 *McGlinchy v. Shull Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (citations omitted). Dismissal

18 may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged

19 under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F. 2d 530, 534

20 (9th. Cir. 1984).

21            A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its

22 face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has "facial plausibility" when the

23 party seeking relief "pleads factual content that allows the court to draw the reasonable inference

24 that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept as

25 true the well-pled facts in a complaint, conclusory allegations of law and unwarranted inferences

26 will not defeat an otherwise proper Rule 12(b)(6) motion. *See Sprewell v. Golden State Warriors*,

27 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his

28 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

1    elements of a cause of action will not do.  Factual allegations must be enough to raise a right to

2    relief above the speculative level."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

3    (citations and footnote omitted).

4         "Finally, although Rule 12(c) does not mention leave to amend, courts have discretion both

5    to grant a Rule 12(c) motion with leave to amend, and to simply grant dismissal of the action

6    instead of entry of judgment."  *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1139 (N.D. Cal.

7    2019) (quoting *Lonberg v. City of Riverside*, 300 F.Supp.2d 942, 945 (C.D. Cal. 2004)).

8         **II.      Motion to Remand**

9         Courts construe the removal statute against removal jurisdiction and "[t]he party seeking

10   removal bears the burden of establishing jurisdiction."  *Tanner v. Ford Motor Co.*, 424 F. Supp.

11   3d 666, 670 (N.D. Cal. 2019) (citations omitted); *see also* 28 U.S.C. § 1441.  The "well-pleaded

12   complaint" rule provides that "federal jurisdiction exists only when a federal question is present on

13   the face of the plaintiff's properly pleaded complaint."  *Caterpillar, Inc. v. Williams*, 482 U.S.

14   386, 392 (1987).  "A corollary to the well-pleaded complaint rule is the 'complete preemption'

15   doctrine, which applies in cases in which 'the preemptive force of a statute is so extraordinary that

16   it converts an ordinary state common-law complaint into one stating a federal claim for purposes

17   of the well-pleaded complaint rule.'"  *In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1057

18   (9th Cir. 2007) (quoting *Caterpillar*, 482 U.S. at 393).  "Once an area of state law has been

19   completely preempted, any claim purportedly based on that pre-empted state law is considered,

20   from its inception, a federal claim, and therefore arises under federal law."  *Id.*; *see also Braswell*

21   *v. AHMC San Gabriel Valley Med. Ctr. LP*, No. CV-21-09959-MWF-AGR, 2022 WL 707206, at

22   *2 (C.D. Cal. Mar. 8, 2022).

23   **III.     Judicial Notice**

24        When considering a motion for judgment on the pleadings, "the court may consider facts

25   which may be judicially noticeable."  *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 970

26   (N.D. Cal. 2017); *see also Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th

27   Cir. 1999).  Courts "may judicially notice a fact that is not subject to reasonable dispute" if the fact

28   "can be accurately and readily determined from sources whose accuracy cannot reasonably be

United States District Court
Northern District of California

5

questioned." Fed. R. Evid. 201(b).

At a motion for judgment on the pleadings, courts generally do not consider exhibits attached to the motion unless they were attached to the complaint, or the motion is converted to summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). But review of a motion for judgment on the pleadings may extend beyond "the contents of the complaint" to include "evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the . . . motion.'" *See Armstrong v. Reynolds*, 22 F.4th 1058, 1064 n.2 (9th Cir. 2022) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)); *see also Ritchie*, 342 F.3d at 908. If an exhibit meets those requirements, courts may consider the document in a motion to dismiss or motion for judgment on the pleadings without converting it into a motion for summary judgment. *See Armstrong*, 22 F.4th at 1083 n.6 (citing *Marder*, 450 F.3d at 448).

Courts may also "consider evidence in deciding a remand motion, including documents that can be judicially noticed." *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 941 (C.D. Cal. 2014) (citing *Ryti v. State Farm Gen. Ins. Co.*, No. C 12–01709 JW, 2012 WL 2339718, *1 n. 4 (N.D. Cal. May 30, 2012)).

## DISCUSSION

### I.       Requests for Judicial Notice

As a preliminary matter, WeDriveU requests that I take judicial notice of three documents: the CBA, the Davis settlement documents, and a declaration from the WeDriveU Chief Financial Officer that also includes Chatman's employee application. *See* Class Dkt. No. 19 (CBA); PAGA Dkt. No. 17 (CBA); Class Repl. Ex. A, B [Class Dkt. No. 23] (Davis settlement documents); Opposition to Motion to Remand ("Rem. Oppo.") [PAGA Dkt. No. 26] Ex. A, B, C (declaration and employee application). Chatman requests I take judicial notice of a district court opinion attached to her Reply to Motion to Remand ("Rem. Repl.") [PAGA Dkt. No. 29].

Chatman does not oppose WeDriveU's request for judicial notice of the CBA. She does not question its authenticity (though she argues that WeDriveU intentionally did not include the

1    effective date, as discussed below).  *See Armstrong*, 22 F.4th at 1064 n.2.  While the complaint

2    does not refer to the CBA, the claims inherently rely on the CBA, as evidenced by WeDriveU's

3    argument that those claims are preempted by the CBA.  *See id.*  Therefore, the document is central

4    to those claims.  *See id.*  This request for judicial notice is GRANTED.

5              Chatman also does not oppose WeDriveU's request for judicial notice of the Davis

6    Settlement documents, which includes a declaration from Tina Chiango and the Final Approval of

7    the Davis/Timmins Class Action Settlement.  *See* Class Repl. at 5 n.2; *id.* Ex. A.  WeDriveU's

8    exhibits were filed with the Superior Court of California and so are publicly available records that

9    may be judicially noticed.  *See ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1008 n.2 (9th

10   Cir. 2014).  This request for judicial notice is GRANTED.

11             Chatman's request for judicial notice of the district court opinion is GRANTED for the

12   same reason.  *See id.*

13             Finally, Chatman does not appear to oppose judicial notice of WeDriveU's exhibits

14   attached to its Opposition to the Motion to Remand.  *See* Rem. Oppo. Ex. A.  On a motion to

15   remand, I may consider evidence subject to judicial notice, *see Vasserman*, 65 F. Supp. 3d at 941,

16   but I decline to do so here.  The exhibits contain a declaration from the WeDriveU Chief Financial

17   Officer attesting to the effective dates of the CBA, along with copies of Chatman's job application

18   and driving record.  *See* Rem. Oppo. Ex. A, B, C.  Chatman disputes the effective date of the CBA

19   and alleges she began work on a different date than that provided in the job application.  *See*

20   Opposition to Motion for Judgment on the Pleadings in PAGA Case ("PAGA Oppo.") [Dkt. No.

21   26] 1:8-17; Class Compl. ¶ 3.  Because of these disputes, and because I cannot determine the

22   veracity of the facts at this stage without other evidence, I decline to judicially notice these

23   exhibits.  *See* Fed. R. Evid. 201(b).[2]

United States District Court
Northern District of California

---

[2] At any rate, WeDriveU submitted these documents to prove the CBA's effective date and to suggest Chatman began working in May 2018 instead of April, as she asserts.  Because the Davis settlement agreement waives Chatman's claims from April 2018 to December 22, 2018, *see infra* Discussion.III.1, these arguments and documents are not relevant to WeDriveU's defense.

## II.     Subject Matter Jurisdiction

Chatman filed a motion to remand the PAGA case to state court, which asserted in part that I do not have jurisdiction over that case because the complaint concerns only questions of state law.[3] *See generally* Rem. Mot.  She asserts LMRA § 301 preemption cannot give rise to federal jurisdiction, Rem. Repl., and that her PAGA claims do not create federal jurisdiction under § 301 preemption because the real party in interest in PAGA suits is the state of California, which was not a party to the CBA, Rem. Mot. 1:16-18; 7:22-9:3.  In turn, WeDriveU contends there is federal jurisdiction over Chatman's underlying overtime, meal period, and sick leave claims because those rights arise from her CBA and are thus preempted by LMRA § 301.  *See generally* Rem. Oppo.

As a brief background, LMRA § 301 is "a jurisdictional statute" that "authorized the federal courts to develop a federal common law of CBA interpretation." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451 (1957)).  This federal common law and § 301 preemption extend to all cases "whose resolution 'is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'" *Id.* (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).  Preempted claims include those "founded directly on rights created by collective-bargaining agreements" as well as those "substantially dependent on analysis of a collective-bargaining agreement." *Id.* (citing *Caterpillar*, 482 U.S. at 396 n.10); *see also Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (outlining two-part test for § 301 preemption).  "[F]ederal preemption under § 301 is an essential component of federal labor policy" as it is an "effort to erect a system of industrial self-government" that "calls into being a new common law." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (internal citations and quotation marks omitted).  "[T]he labor arbitrator [chosen by the CBAs] is usually the appropriate adjudicator for CBA disputes because [they were] chosen due to the parties' confidence in [their] knowledge of the common law of the shop." *Id.*

Federal case law regarding LMRA § 301 preemption has shifted in recent years.  In certain

---

[3] I address Chatman's other arguments from her Motion to Remand, *infra* Discussion.V.

prior federal cases where employees asserted state law claims of violations of workers' statutory rights, the employers countered that the statutes providing those rights contained exceptions for workers covered by valid CBAs, so the rights arose from the CBAs and were preempted by LMRA § 301. *See, e.g.*, *Young v. Securitas Sec. Servs. USA, Inc.*, No. 17-CV-05342-JCS, 2018 WL 1142190, at *2-3 (N.D. Cal. Mar. 2, 2018); *Lopez v. Sysco Corp.*, No. 15-cv-04420-JSW, 2016 WL 3078840, at *3-5 (N.D. Cal. Jan. 25, 2016); *Vasserman*, 65 F. Supp. 3d at 953-54. Federal courts rejected that preemption argument because, they reasoned, the statutory exceptions were affirmative defenses that did not create LMRA preemption, and in some cases, did not confer federal jurisdiction. *See Young*, 2018 WL 1142190 at *7 (reasoning that statutory exceptions to labor law requirements "are affirmative defenses [that] do not give rise to section 301 preemption, even if adjudication of those defenses would require reference to the CBA" (citing *Cramer*, 255 F.3d at 691)); *Lopez*, 2016 WL 3078840, at *3-4 ("To the extent [the employer] argues merely invoking an exemption [to the statutory right] will satisfy [the test for § 301 preemption], the Court does not find the argument persuasive."); *Vasserman*, 65 F. Supp. 3d at 954 (determining that the statutory exception to overtime wages for CBA-covered employees is an affirmative defense that does not give rise to § 301 preemption). *But see Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1097 (N.D. Cal. 2014) (reaching the opposite conclusion with a similar fact pattern). Indeed, the Ninth Circuit alluded to a similar analysis as recently as 2018: "[C]laims are not simply CBA disputes by another name, and so are not preempted under this first step, if they just . . . invite use of the CBA as a defense." *Alaska Airlines v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (en banc) (citing *Caterpillar*, 482 U.S. at 398).

But in 2019, the Ninth Circuit reached a different conclusion in *Curtis*. In that case, the defendant removed to federal court the plaintiff's state law claims that the defendant violated various provisions of the state labor code, including its provision for overtime pay. *Curtis*, 913 F.3d at 1150-51. Like the cases above, the defendant asserted that the overtime claim (among others) was preempted by LMRA §301 because, although the plaintiff's claim was for violation of the statutory right to overtime wages, the statutory exception to that right applied as the plaintiff was covered by a valid CBA. *See id.* at 1151. Any right the plaintiff had to overtime wages, the

defendant argued, came not from the statute but from the CBA provisions.  *See id.*  The overtime

claim, therefore, was preempted by LMRA § 301 because the claim arose from the terms of the

CBA, and because it was preempted, the federal court had jurisdiction.  *See id.*

The Ninth Circuit agreed.  *Id.* at 1153-54.  The court determined that it had jurisdiction

over the alleged state law violation because the statutory exception applied and so the claim was

preempted by § 301.  *See id.* at 1151 n.4 (determining the district court had jurisdiction over the

overtime claim under § 301); *id.* at 1155 (holding the overtime claims arose under the CBA and so

were preempted by § 301).  The court further declared:  "Although normally federal preemption is

a defense that does not authorize removal to federal court, § 301 has such 'extraordinary pre-

emptive power' that it 'converts an ordinary state common law complaint into one stating a federal

claim for purposes of the well-pleaded complaint rule.'"  *Id.* at 1152 (quoting *Metro. Life. Ins. v.*

*Taylor*, 481 U.S. 58, 65 (1987)).  "In other words, a civil complaint raising claims preempted by

§ 301 raises a federal question that can be removed to a federal court."  *Id.*

In light of Chatman's insistence that *Curtis* does not provide a basis for jurisdiction, *see*

Rem. Repl., the dictate of *Curtis* bears repeating:  "[A] civil complaint *raising claims preempted*

*by § 301* raises a federal question *that can be removed to a federal court*."  *Id.* (emphasis added).

Chatman cites some decisions that granted motions to dismiss in part because they found § 301

preemption did not confer federal jurisdiction, but several of her citations are pre-*Curtis* decisions

and many of the ones that came after did not discuss the rule from *Curtis*.[4]  Rem. Repl. 2:15-3:2;

7:10-9:6.  She also distinguishes *Curtis* because she says no party had contested jurisdiction so the

court did not consider it, but that is incorrect, *see id.* at 1151 n.4, and irrelevant, because a court

must have jurisdiction to rule on the merits, *see Firestone Tire & Rubber Co. v. Risjord*, 449 U.S.

368, 379 (1981).  Additionally, many post-*Curtis* decisions have properly applied *Curtis*'s

---

[4] *See, e.g.*, Rem. Repl. Ex. A (attaching Order Granting Motion to Remand in *Hood v. Nat'l Steel & Shipbuilding Co.*, No. 3:21-cv-00663-AJB-DEB (S.D. Cal. Mar. 28, 2022)); *Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806 (C.D. Cal. 2020); *Matthews v. Amtrak Nat'l R.R. Passenger Corp.*, 402 F. Supp. 3d 930 (E.D. Cal. 2019).  *But see Zamora v. Overhill Farms, Inc.*, No. 2:19-CV-03891-VAP-AFMx, 2019 WL 3942961, at *4 n.3 (C.D. Cal. Aug. 21, 2019) (distinguishing *Curtis* because in *Ross* the plaintiff did not concede her arose under the CBA); *Ross v. Stater Bros. Mkts.*, No. 5:19-CV-00755-SJO-KKX, 2019 WL 6332241, at *4 (C.D. Cal. Aug. 8, 2019) (same).

United States District Court
Northern District of California

clarified jurisdictional mandate, found subject matter jurisdiction based on § 301 preemption, and denied motions to remand.[5]

Federal jurisdiction makes sense in light of the history and purpose of § 301, including LMRA's goal of creating federal common law and directing CBA-related claims to the parties' chosen labor arbitrators. *See Curtis*, 913 F.3d at 1152. And most importantly, I am required to follow Ninth Circuit precedent regardless of any conflict with district court determinations. While I do not think there is a conflict here, I must apply the jurisdictional rule from *Curtis*, which is directly applicable to this case. *See id.* As discussed below, Chatman is statutorily excepted from overtime, meal period, and sick pay statutes because she is covered by a valid CBA. *See infra* Discussion.III.2. Under the reasoning of *Curtis*, Chatman's rights to overtime, meal periods, and sick leave wages arise from the CBA and not from the statute, and so are preempted by LMRA § 301. *See Curtis*, 913 F.3d at 1154-55. I therefore have jurisdiction over those claims in the class complaint.

I also have jurisdiction over the PAGA case. Federal courts "look to the underlying character of the claim" and find jurisdiction where the PAGA claim is, "in part, derivative of [plaintiff's] own overtime and meal period claims." *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 748 (S.D. Cal. 2021). Chatman's PAGA claim seeks civil penalties in part for WeDriveU's alleged violations of California Labor Code sections 510 (regulating payment of overtime wages); 226.7 and 512 (regulating meal periods); and 201-04, 233, and 246 (regulating provisions for sick leave). PAGA Compl. ¶ 20, 22, 34. The "underlying character of the claim," then, relies on the underlying alleged violations of overtime, meal period, and sick leave laws. *See Radcliff*, 519 F. Supp. 3d at 748. As in *Radcliff*, here Chatman's PAGA claims are at least partly derivative of her overtime, meal period, and sick leave claims, which as discussed below, are

---

[5] *See, e.g.*, *Giles v. Canus Corp.*, No. 22-CV-03097-MMC, 2022 WL 3370793, at *4 & n.8 (N.D. Cal. Aug. 16, 2022); *Fennix v. Tenderloin Hous. Clinic, Inc.*, No. 20-CV-05207-DMR, 2020 WL 6462394, at *3-4 (N.D. Cal. Nov. 3, 2020) (explicitly rejecting plaintiff's reliance on *Vasserman* and other pre-*Curtis* authorities as "no longer good law"); *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, No. CV-2109959-MWF-AGR, 2022 WL 707206, at *2-4 (C.D. Cal. Mar. 8, 2022); *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 747-49, 752 (S.D. Cal. 2021); *Blackwell v. Com. Refrigeration Specialists, Inc.*, No. 2:20-CV-01968-KJM-CKD, 2021 WL 2634501, at *3-5, 7 (E.D. Cal. June 25, 2021).

preempted by LMRA § 301.  *See* Discussion.III.2.  Because the PAGA claims rely in part on the preempted claims, over which I have jurisdiction, I also have jurisdiction over the PAGA claims. *See Radcliff*, 519 F. Supp. 3d at 748; *see also Blackwell*, 2021 WL 2634501, at \*6.

### III.      Motions for Judgment on the Pleadings

WeDriveU moved for partial judgment on the pleadings in the purported class action and the PAGA case for the specific allegations that WeDriveU violated overtime, meal period, and sick leave laws.  Class Mot.; PAGA Mot.  WeDriveU asserts that these claims are preempted by LMRA § 301 and should be dismissed.  Chatman argues that judgment on the pleadings is improper because her claims arise under state law and not the CBA, the effective date of the CBA is a contested material fact and so the claims should not be dismissed, and WeDriveU does not show the CBA covers all purported class members.[6]  Class Oppo.; PAGA Oppo.

#### 1.   **2018 Settlement**

As a preliminary matter, under the terms of the 2018 Davis Settlement agreement Chatman released all her claims that arose before December 22, 2018.  *See* Repl. Class Action Ex. A.  The Davis Settlement was approved by the Santa Clara Superior Court on November 15, 2019.  *See id.* Ex. B.  Unless an individual opted out, the agreement released the claims of any WeDriveU employee that arose before or on December 22, 2018, related to:

- failure to pay meal period premiums or failure to provide meal periods under the Labor Code or Wage Order [as claimed in Count 4 of the Class Action case];
- failure to pay rest period premiums or failure to authorize and permit rest periods under the Labor Code or Wage Order [as claimed in Count 5 of the Class Action case];
- [a]ll claims for unpaid wages, failure to pay minimum wage, failure to pay overtime, including related to the calculation of the overtime rate, and any other claim for failure to pay wages under the Labor Code or Wage Order [as claimed in Count 2 of the Class Action case];
- [a]ll claims for failure to reimburse business expenses [as claimed in Count 7 of the Class Action case];

---

[6] As WeDriveU notes, Class Repl. 2:21-26; PAGA Repl. 2:17-20, it does not need to prove that the CBA covers all purported class members in order to dismiss Chatman's claims because *she* is covered by the CBA.  If the purported class representative does not have a claim, she may not seek relief on behalf of herself or any other member of the purported class.  *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019).

- [a]ll claims for failure to timely pay wages and/or waiting time penalties [as claimed in Counts 2-8 of the Class Action case];
- [a]ll claims related to the payment of vacation pay or paid sick leave, whether under any other provision of the Labor Code or any other law [as claimed in Count 8 of the Class Action case];
- [a]ll claims for failure to maintain records or personnel files [as claimed in Count 3 of the Class Action case];
- [a]ll claims for failure to issue adequate wage statements, whether for any penalty or wage [as claimed in Counts 2-8 of the Class Action case];
- [a]ll claims for penalties under [PAGA] based on any Labor Code violation which was alleged . . . or which could have been alleged based on the facts alleged [as claimed in the PAGA case];
- [a]ll claims for unfair business practices under Business and Professions Code § 17200 . . . [as claimed in Count 1 of the Class Action case];
- [a]ny other claims alleged . . . or which could have been alleged based on the facts alleged.

*Id.* Ex. A at pdf 11-12.

Chatman alleged in her complaint that she started work with WeDriveU in April 2018,[7] Class Compl. ¶ 3, and her name does not appear on the list of individuals who opted out of the settlement, Repl. Class Action Ex. B.  Under the plain terms of the settlement, then, Chatman released all relevant claims arising before December 22, 2018.[8]  Her claims in the purported class action are DISMISSED to the extent that they arise before December 22, 2018.

### 2. LMRA § 301 Preemption

"Although § 301 contains no express language of preemption, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis*, 913 F.3d at 1151 (*first citing Luek*, 471 U.S. at 210, *then citing Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962)). "Thus, any suit 'alleging a violation of a provision of a labor contract must be brought under § 301

---

[7] This is a contested fact and WeDriveU attempted to submit a declaration showing that Chatman did not begin working until May.  But because the Davis Settlement waived all claims brought before September 2018, whether Chatman began working in April or May 2018 is immaterial to this case and so does not preclude judgment on the pleadings.

[8] In Chatman's opposition to these motions, she argues that WeDriveU did not show the CBA was in effect before September 2018 and so her claims arising between April and September could not arise from a CBA and are not preempted by LMRA.  *See* PAGA Oppo. 1:12-17, 2:4-15.  But those claims were waived under the terms of the Davis Settlement, and so I do not address the substance of that argument further.

and be resolved by reference to federal law." *Id.* at 1151-52 (citing *Luek*, 471 U.S. at 210). "A state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law." *Id.* at 1152 (quoting *Luek*, 471 U.S. at 210). However, Section 301 does not "broadly . . . pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Id.* Claims alleging violations of statutory rights to minimum wage, work hours, pay periods, and paid or unpaid leave "will not necessarily be preempted, even when a plaintiff is covered by a CBA" because those areas are "well within the traditional police power of the states." *Id.* (citation omitted).

There is a two-step test to determine whether a claim is "grounded in a CBA" and therefore preempted by the LMRA. *Alaska Airlines*, 898 F.3d at 920-21. First, courts "evaluate the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself." *Id.* at 921 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). Courts ask "whether the asserted cause of action involves a right that exists solely as a result of the CBA." *Curtis*, 913 F.3d at 1151 (citation and brackets omitted). If the answer is yes, "the claim is preempted and [the] analysis ends there." *Id.* at 1153 (citation and brackets omitted).

If the answer is no, the next inquiry asks if "a plaintiff's state law right is substantially dependent on analysis of the CBA, which turns on whether the claim cannot be resolved by simply looking to versus interpreting the CBA." *Id.* at 1151 (citation, brackets, and internal quotation marks omitted). "'Interpretation' is construed narrowly; 'it means something more than "consider," "refer to," or "apply."'" *Alaska Airlines*, 898 F.3d at 921 (citations omitted). At the second step of the preemption analysis, "claims are only preempted to the extent there is an active dispute over 'the meaning of contract terms.'" *Id.* (quoting *Livadas*, 512 U.S. at 124).

**A.  Overtime**

Chatman's overtime claims stem from WeDriveU's alleged failure to pay overtime wages, in violation of California Labor Code sections 510 and 1194, along with alleged violations of sections 201, 202, and 203 for waiting time penalties. Class Compl. ¶¶ 75-90.

Although Labor Code section 510 provides for overtime compensation, there is a statutory exception in section 514:

> Section[] 510 . . . do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Cal. Lab. Code § 514.  Chatman's CBA meets each of those requirements.  *See* Request for Jud. Notice Ex. A at 27-28 (wages, not less than 30 percent more than state minimum wage); 6 (hours of work); 6-7, 9, 17-18, 28 (working conditions); 6-7 (premium overtime).  Because it is undisputed that Chatman is covered by that CBA, the exception in section 514 applies and she is not entitled to overtime compensation under section 510.  Therefore, any right she has to overtime wages "exists solely as a result of the CBA and therefore is preempted under § 301."  *Curtis*, 913 F.3d at 1154 (internal citation and quotation marks omitted); *see also Giles*, 2022 WL 3370793, at *4 (finding statutory overtime claims preempted by CBA where plaintiff was covered by valid CBA); *Fennix*, 2020 WL 6462394, at *3 (same); *Nettles v. Paramedics Logistics Operating Co., LLC*, No. 21-CV-08895-MMC, 2022 WL 137631, at *1 (N.D. Cal. Jan. 14, 2022) (same).  The related claims underlying her PAGA cause of action are preempted for the same reasons, as is her claim under Labor Code section 1194,[9] which simply provides remedies for violations of statutory overtime rights.

Chatman's other overtime wage claims concern whether she was paid on time and in the proper amounts for her overtime hours.[10]  *See* Cal. Lab. Code § 201 (providing for immediate payment of wages upon discharge or layoff); *id.* § 202 (providing for immediate payment of wages upon resignation); *id.* § 203 (providing for penalties after failure to pay wages within a required period of time).  "[T]he underlying character of the[se] claim[s]," each relies on Chatman's right to overtime wages, which in turn arises from the rights conferred upon her by her

---

[9] Labor Code section 1194 provides, "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation."  Cal. Lab. Code § 1194(a).

[10] It is not clear from the complaint that Chatman can state a cause of action under the statutes that relate to payment of wages after termination because Chatman's complaint suggests she is a current employee.  *See* Class Compl. ¶ 3 ("PLAINTIFF *has been employed* by DEFENDANT in California since April of 2018." (italicized emphasis added)).

CBA. *Radcliff*, 519 F. Supp. at 748. For example, Chatman's section 201 claim—presumably that she was not immediately paid her properly calculated overtime compensation upon discharge or layoff, though she does not allege she was discharged or laid off—relies on the fact that she had the right to certain overtime compensation under the CBA. Because the section 201 claim relies on Chatman's rights to overtime compensation, it is derivative of her preempted section 510 claim and is also preempted by LMRA § 301. *See id.* The same is true of the other overtime claims.

Because all of Chatman's claims related to overtime compensation, including violation of overtime laws as basis for her PAGA suit, are preempted by LMRA § 301, WeDriveU's motion for judgment on the pleadings is GRANTED as to Chatman's overtime claims.

**B. Meal Periods**

Chatman's meal period claims allege that WeDriveU failed to provide required meal periods under California Labor Code sections 226.7 and 512. Class Compl. 33:4-8; ¶¶ 91-94.

Labor Code section 512(a) provides a default rule for meal periods.[11] Subsection (e) provides that the default rule does not apply to employees "covered by a valid collective bargaining agreement," which is defined as one that

> expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

Cal. Lab. Code § 512(e). Chatman's CBA meets most of these requirements. *See* Request for Jud. Notice Ex. A at 27-28 (wages, not less than 30 percent more than state minimum wage); 6 (hours of work); 6-7, 9, 17-18, 28 (working conditions); 22-24 (final and binding arbitration); 6-7 (premium overtime).

But the parties dispute whether the CBA "expressly provides for meal periods" for covered

---

[11] "An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived." Cal. Lab. Code § 512(a).

employees. *See* Cal. Lab. Code § 512(e). The dispute turns on the interpretation of the provision, "Any employee deprived of the full thirty (30) minute unpaid lunch period; such employee shall be paid one (1) hour of straight-time pay in addition to any other pay for the day." Req. for Jud. Notice Ex. A at 7. Chatman asserts that this does not provide for meal periods, while WeDriveU counters that this term creates rights to meal periods by describing the consequences of not providing a meal period. *See* Rem. Mot. 6:22-28; PAGA Oppo. 5:3-6; *see also* Rem. Oppo. 6 n.1.

I must analyze whether the CBA expressly provides for meal periods to determine whether the statutory exception in Labor Code section 512(e) applies to Chatman's claims, so that I may address whether Chatman's meal period rights are grounded in the CBA and exist solely as a result of the CBA. *See Curtis*, 913 F.3d at 1151. If the CBA expressly provides for meal periods so the statutory exception in section 512(e) applies, then Chatman's meal period rights "exist[] solely as a result of the CBA and therefore [are] preempted under § 301." *Id.* at 1154.

But even if the answer is no, Chatman's meal period claims under Labor Code section 512 are still preempted by LMRA § 301. That is because I would move onto the second step of the preemption analysis and ask whether her meal period rights are "substantially dependent on analysis of the CBA." *Id.* At this step, claims are preempted "to the extent that there is an active dispute over 'the meaning of contract terms.'" *Alaska Airlines*, 898 F.3d at 921 (quoting *Livadas*, 512 U.S. at 124). Here the parties actively dispute the meaning of the provision outlining consequences for not providing meal periods. To determine which party is right, and whether Chatman is entitled to relief, I would have to interpret that term and other CBA provisions. For that reason, the meal period claims arising under Labor Code section 512 would be preempted at the second step of LMRA preemption analysis, even if they are not preempted at the first.

For similar reasons, Chatman's meal period claims under Labor Code section 226.7 are also preempted by LMRA § 301. Labor Code section 226.7 provides a default rule for off-duty meal periods along with penalty wages if employers fail to provide those meal periods. Cal. Lab. Code § 226.7(b), (c), (d). The rights do "not apply to an employee who is exempt from meal . . . period requirements pursuant to other state laws, including, but not limited to, a statute or regulation." *Id.* § 226.7(e). As explained in the preceding paragraphs, to determine whether

Chatman is exempt from meal period requirements pursuant to another state law—Labor Code section 512(e)—I would have to interpret the meal period provision in the CBA. The allegation, then, would be preempted at the second step of LMRA § 301 preemption analysis, even if it is not preempted at the first step. *See Alaska Airlines*, 898 F.3d at 921.

Because Chatman's meal period claims are preempted by § 301, I GRANT WeDriveU's motion for judgment on the pleadings as to the meal period claims.

**C. Sick Leave**

Chatman also alleges violations of her sick leave rights under California Labor Code sections 201-04, 233, and 246. She asserts she was paid at the incorrect rate of pay for her sick leave because it was based on her hourly pay instead of her regular pay rate and did not include overtime premiums. Class Compl. ¶¶ 107-12. She also asserts she was not paid for her vested sick day wages. *Id.*

Labor Code section 246 provides that an "employee" is "entitled to paid sick days as specified in this section." Cal. Lab. Code § 246. Section 245.5 further provides that "[e]mployee" in section 246 does not include workers

> covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for paid sick days or a paid leave or paid time off policy that permits the use of sick days for those employees, final and binding arbitration of disputes concerning the application of its paid sick days provisions, premium wage rates for all overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

*Id.* § 245.5(a)(1). Chatman's CBA meets each of those requirements. *See* Request for Jud. Notice Ex. A at 27-28 (wages, not less than 30 percent more than state minimum wage); 6 (hours of work); 6-7, 9, 17-18, 28 (working conditions); 16 (paid sick days); 22-24 (final and binding arbitration); 6-7 (premium overtime). Because Chatman is undisputedly covered by that CBA, she is not an "employee" entitled to sick days under Labor Code section 246. *See id.* Therefore, any right to paid sick leave does not come from the statute, but rather from the CBA itself. Her section 246 claims (and related PAGA assertions) are therefore preempted by the LMRA, for the same reasons that the overtime claims described above are preempted. *See Curtis*, 913 F.3d at 1154 (finding any right that "exists solely as a result of the CBA . . . therefore is preempted under

18

§ 301" (internal citation and quotation marks omitted)); *cf. Dignity Health v. Dep't of Indus. Rels., Div. of Lab. Standards Enf't*, 445 F. Supp. 3d 491, 501-04 (N.D. Cal. 2020) (determining sick leave claims were not preempted where sick leave provisions in CBA did not apply to the plaintiffs).

Chatman's other sick leave wage claims concern whether she was paid on time in the proper amounts for her sick days and vested wages after termination.[12]  *See* Cal. Lab. Code § 201 (providing for immediate payment of wages upon discharge or layoff); § 202 (providing for immediate payment of wages upon resignation); § 203 (providing for penalties after failure to pay wages within a required period of time); § 204 (providing for wages paid in semimonthly payments); and § 233 (providing that employers must permit workers to use sick days for outlined reasons).  "[T] he underlying character of the[se] claim[s]" rely on Chatman's underlying right to sick day wages, which itself arises from the rights conferred upon her by her CBA.  *Radcliff*, 519 F. Supp. at 748.  For example, Chatman's section 201 claim—presumably that she was not immediately paid her vested sick day wages upon discharge or layoff, though she does not allege she was discharged or laid off—relies on the fact that she accrued sick days through her rights in the CBA.  The character of the alleged section 201 violation requires understanding and applying Chatman's rights to sick days as provided by the CBA.  The same is true of the other sick day related claims.  For that reason, they are derivative of her section 246 claim, and therefore also preempted by the LMRA.  *See id.*

Because all of Chatman's sick leave claims are preempted by LMRA § 301, I GRANT WeDriveU's motion for judgment on the pleadings as to those claims.

### D.  PAGA

Chatman's PAGA action relies in part on the alleged violations of California labor statutes providing rights for overtime, meal period, and sick leave compensation.  Because her "PAGA claims for civil penalties are, in part, derivative of [her] own overtime and meal period [and sick leave] claims," and those underlying claims are preempted by LMRA § 301, the PAGA cause of

---

[12] *See supra* n.8.

action is also preempted as to those claims. *Radcliff*, 519 F. Supp. 3d at 748-49 (citing *Curtis*, 913 F.3d at 1150 n.3). Though *Radcliff* is not binding authority, I find its reasoning persuasive because it accords with the function of PAGA, which provides civil penalties for the violation of underlying law. Where there is no violation of the underlying law because the rights did not arise from the law but from the CBA, there is no basis for the PAGA claim.

Chatman's PAGA claims also relied on other alleged violations, including alleged violations of minimum wage, rest periods, reporting time, time sheets, and other rights. "[I]f there are multiple claims underlying [a] sole PAGA claim, . . . courts consider the preemption issue for each claim separately." *Nettles*, 2022 WL 137631, at *1 (quoting *Jimenez v. Young's Market Co., LLC*, No. 21-cv-02410-MEC, 2021 WL 59990821, at *7 (N.D. Cal. Dec. 20, 2021)). Neither party argues or presents authority showing that these other underlying claims are preempted by LMRA § 301. The PAGA cause of action is not preempted concerning these underlying state law claims. *See, e.g.*, *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1146 (N.D. Cal. 2019) (finding plaintiff's PAGA claims were not preempted by LMRA where they were derivative of other, non-preempted claims).

Therefore, WeDriveU's motion for judgment on the pleadings in the PAGA case is GRANTED as to the underlying claims of overtime, meal periods, and sick leave, and DENIED to the extent that it sought judgment based on the other underlying claims.

### IV.     Leave to Amend

Leave to amend should be freely granted under Federal Rule of Civil Procedure 15, but "need not be granted where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Gall v. City of San Jose*, No. C 08-00120 JW, 2008 WL 5046296, at *1 (N.D. Cal. Nov. 25, 2008).

Here, it is clear from the CBA that Chatman's overtime, meal period, and sick leave rights "exist[] solely as a result of the CBA" and so are preempted by LMRA § 301. *Curtis*, 913 F.3d at 1152-53 (citations omitted). Chatman conceded in her briefs that she was covered by the CBA (for the relevant period after December 22, 2018, as discussed in this order) and does not contest the authenticity of the submitted CBA. Federal law is clear that these claims are preempted.

United States District Court
Northern District of California

1    Therefore, leave to amend would be futile because Chatman cannot assert additional facts that

2    would change this finding.  Those claims are dismissed with prejudice.  Her other contentions

3    remain.  *See, e.g.*, *Sarmiento*, 367 F. Supp. 3d at 1146.

4    **V.      Motion to Remand**

5          Finally, Chatman moved to remand the PAGA action to state court based on lack of

6    jurisdiction.  *See* Rem. Mot.  Exercising proper subject matter jurisdiction over the PAGA case,

7    *supra* Discussion.II, I granted judgment on the pleadings to the defendant to the extent that the

8    PAGA cause of action relied on underlying preempted claims, *supra* Discussion.III.

9          I have supplemental jurisdiction over the PAGA case to the extent that it relies on non-

10   preempted state law claims.  *See* 28 U.S.C. § 1367.  But I have "discretion to remand

11   supplemental claims in a properly removed case to state court when none of the federal claims are

12   remaining, upon a proper determination that retaining jurisdiction over the case would be

13   inappropriate." *Radcliff*, 519 F. Supp. 3d at 746-47 (citations omitted) (quoting *Harrell v. 20th*

14   *Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991)); *see also* 28 U.S.C. § 1367(c) (outlining

15   considerations governing a district court's decision to decline to exercise supplemental

16   jurisdiction).  Retaining jurisdiction here would be inappropriate because I have "dismissed all

17   claims over which [I have] original jurisdiction."  28 U.S.C. § 1367(c)(3).  Therefore, I GRANT

18   Chatman's Motion to Remand, in part, and remand the PAGA cause of action and its remaining

19   underlying claims.

20         I also have supplemental jurisdiction over the remaining state law claims in the purported

21   class action and for the same reasons, I decline to exercise supplemental jurisdiction over those

22   claims.  *See* 28 U.S.C. § 1367(c).  I sua sponte remand to state court the remaining non-preempted,

23   state law claims in the class case.  *See Young v. Securitas Security Svcs. USA, Inc.*, No. 17-CV-

24   05342-JCS, 2018 WL 1142190, at *8 (N.D. Cal. Mar. 2, 2018) (dismissing claims preempted by

25   LMRA and sua sponte remanding to state court all remaining claims as they arose under state law

26   and were not preempted).

27   **CONCLUSION**

28         For the foregoing reasons, WeDriveU's motions for partial judgment on the pleadings are

United States District Court
Northern District of California

GRANTED and Chatman's motion to remand the PAGA case is GRANTED in part.  The remaining claims in both cases are remanded to the San Mateo Superior Court.  Judgment shall be entered accordingly.

   **IT IS SO ORDERED.**

   Dated: October 28, 2022



William H. Orrick
United States District Judge